UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-04-258 |
| § | CIVIL ACTION  NO. H-08-267 |
| RUSSELL RAY PRYOR, § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR DISMISSAL AND DENYING MOVANT'S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Response and Motion for Dismissal (Document No. 155), and Movant Russell Ray Pryor's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 152). Having considered Pryor's Motion to Vacate, Set Aside or Correct Sentence, the Government's Response and Motion for Dismissal, the record of the proceedings in the underlying criminal case and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion for Dismissal be GRANTED, Pryor's § 2255 Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED on the merits.

**I.     Procedural History**

Movant Russell Ray Pryor ("Pryor"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Pryor's first motion pursuant to § 2255.

On December 2, 2004, Pryor was charged in a four count superseding indictment with being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1) and 924(e)(1) (Count One); possession of firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two), possession with intent to distribute dihydrocodeinone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count Three); and possession with intent to distribute codeine, in violation of 21 U.S.C. § 841(a)(1) and (b)(3) (Count Four). (Document No. 49). Pryor pled not guilty and proceeded to trial. On December 15, 2004, Pryor was found guilty of all four counts alleged in the superseding Indictment. (Document No. 65). On April 8, 2005, following the preparation of a presentence investigation report, to which Pryor filed Objections (Document Nos. 86, 87, 88, and 90), Pryor was sentenced to 360 months confinement, to be followed by a five year term of supervised release, and a $3,000 fine. (Document No. 97). A Judgment of Conviction was entered on April 15, 2005. (Document No. 110).

Pryor appealed to the Fifth Circuit Court of Appeals, which affirmed his conviction in an unpublished opinion on March 29, 2007. (Document Nos. 146 & 147). This § 2255 proceeding, filed on or about January 17, 2008, followed. (Document No. 152). The Government has filed a Response and a Motion for Dismissal (Document No. 155). In addition, the record has been expanded, upon the Government's motion, to include the affidavit of R.E. Wheelan, Pryor's trial

counsel. Pryor has filed an Affidavit in response. (Document No. 158). This § 2255 proceeding is now ripe for ruling.

II.   **Factual Background**

The factual background, which provides a context for the consideration of Pryor's claims, is set forth by the Fifth Circuit Court of Appeals in its unpublished opinion:

> On March 2, 2004, police officers responded to a call at an Extended Stay Motel in Houston. Officers Gonzalez and Boutte met with Pryor and Pryor's girlfriend, Tennille Nicole Whirl, in the motel's parking lot. The officers first spoke with Whirl, and she told them that Pryor was a drug dealer. Gonzalez then spoke to Pryor and patted him down for safety reasons, discovering $4900 cash in Pryor's left front pocket. The officers placed Pryor under arrest for the assault of Whirl.
>
> Pryor consented to a search of his vehicle and hotel room, but officers did not find any narcotics. The officers asked Pryor if he had any drugs in his apartment, and he responded that he had pills and marijuana. Pryor, riding in the patrol car, directed the officers to the apartment a few miles from the motel. He signed a consent-to-search form, and directed them to his apartment, unit 1511. The police obtained the key to the apartment from Pryor's pocket. Officers testified that Pryor referred to the apartment as "my apartment."
>
> Pryor told the officers that there was no one in the apartment, but that there were guns inside. Once inside, Pryor indicated the location of the guns inside a closet. Officers recovered a shoebox containing pills and two loaded guns. In total, the search of the apartment yielded 664 hydrocodone pills, three full bottles of codeine syrup, and a small amount of marijuana. Upon the discovery of the codeine syrup, Officers testified that Pryor stated, "You got everything." Additionally, officers found over 30 empty codeine bottles, as well as Karo syrup and Big Red soda, which is used to dilute codeine for distribution purposes. While at the apartment, Pryor asked for permission to change his shoes, described a specific pair of red and white Nikes, and told officers where to find the shoes in the closet. The officers brought the shoes to Pryor and he confirmed that they were the right ones.
>
> At trial, Pryor's defense was that it was not his apartment. Pryor claimed that he subletted the apartment to his cousin, Ralph Holmes. Holmes and Pryor both testified that Holmes, not Pryor, lived in the apartment. Pryor argues that the police

officers were lying, as was the apartment manager who testified that she saw Pryor retrieving his mail at the complex on a weekly basis, but had never seen Holmes.

*United States v. Pryor*, No. 05-20307 (Document No. 147) at 1-3.

### III. Issues

Pryor raises five claims in this § 2255 proceeding:

1. that his trial counsel, R.E. Wheelan, was ineffective for: (a) failing to object to the Government's opening statement; (b) failing to investigate the legality of Pryor's arrest, the legality of the search, and the voluntariness of Pryor's consent to the search, and failing to file a pretrial motion to suppress or otherwise object at trial to Pryor's illegal arrest and the illegal search; (c) failing to object to Pryor's appearance at trial in prison garb; (d) failing to object to the use of Pryor's prior convictions for purposes of the career offender enhancement; (e) failing to challenge the sufficiency of the evidence; (f) failing to interview the Government's witnesses; and (g) failing to call Tennille Whirl to testify at trial for the defense;

2. that there is insufficient evidence that he possessed a firearm, possessed any controlled substance, or used a firearm in relation to a drug trafficking offense;

3. that his prior convictions were too remote and not sufficiently severe to have been used for career enhancement purposes;

4. that his Sixth Amendment right to confront the witnesses against him was infringed when a hearsay statement was admitted into evidence; and

5. that his appellate counsel was ineffective for failing to challenge, on appeal, the effectiveness of trial counsel, the sufficiency of the evidence, and the use of Pryor's remote prior convictions for career enhancement purposes.

### IV. Discussion

The Government argues in its Motion for Dismissal that Pryor's claims are either procedurally barred from review or fail on the merits.

### A.     Ineffective Assistance of Trial Counsel Claims

In his first claim, Pryor faults his trial counsel in various respects. Considering Pryor's conclusory allegations of ineffectiveness in connection with the record of the trial proceedings, as well as the affidavits from R.E. Wheelan and Pryor, the undersigned concludes that counsel was not ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient

performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

### 1. Government's opening statement

Pryor first maintains that counsel was ineffective for failing to object to that part of the Government's opening statement in which the Government chronicled the circumstances surrounding Pryor's arrest, including the allegations of an assault by Pryor on his former girlfriend, Tennille Whirl, and Pryor's consent to search his apartment. According to Pryor, the alleged assault did not occur, and his consent to the search was coerced.

The record shows that police responded to an assault allegation made by Pryor's former girlfriend, Tennille Whirl, who identified Pryor as a drug dealer. Upon his arrest, Pryor consented to the search of his car and his apartment. While Pryor now claims that the consent was coerced, no such claim was made at trial. As such, there was no objection to be made by counsel to the

Government's opening statement or its rendition of the circumstances surrounding Pryor's arrest. Counsel was therefore not ineffective, within the meaning of *Strickland*, for failing to object to the Government's opening statement.

### 2. Investigation into arrest, search, and consent to the search

In his next ineffectiveness claim, Pryor complains that counsel should have conducted an investigation into his arrest, the search, and the consent to search. According to Pryor, the allegation by Tennille Whirl of an assault was false, the consent to search was coerced, and both the search and his arrest were illegal. Pryor maintains that his counsel should have challenged the search and the arrest with a pretrial motion to suppress.

In response to this claim of ineffectiveness, R.E. Wheelan stated in his affidavit:

> Mr. Pryor never stated to me that he was in any way compelled to consent to the search of his apartment; to the contrary, he related that he was happy to cooperate with the police because he had sublet the apartment and was not responsible for any contraband that the tenant might have placed in the apartment, although, he, Mr. Pryor had no knowledge of any such contraband. That, then, was the trial strategy– that he cooperated because the items in the apartment were not his.

Affidavit of R.E. Wheelan, attached to the Government's Motion for Dismissal (Document No. 155). Given these statements in Wheelan's affidavit, which have not been disputed by Pryor, counsel had no basis to challenge the arrest or the search. Consequently, counsel was not ineffective for failing to challenge the arrest, the search and/or the consent to search.

### 3. Prison garb

Pryor next faults counsel for failing to object to his presence during trial in prison garb. According to Pryor, his appearance in prison garb denied him his right to a fair trial.

7

The record shows that on the first day of trial, prior to jury selection, counsel advised the Court that Pryor's family had neglected to bring clothing for him for trial. The following exchange took place on the record:

> Mr. Wheelan: . . . . I had asked the family to bring Mr. Pryor clothing and that hasn't been done. He's in his jail clothing. I don't know if the marshals have a stash of –
>
> The Court: Do you have something up there, marshal, that – usually they have something around.
>
> The Marshal: I'm not really 100 percent sure. We can look, your Honor.
>
> The Court: You have a shirt or something he can change into, at least?
>
> The Marshal: We'll try.
>
> The Court: All right. All right. Try to accommodate him if you can, if there's something up there. And the family should have – should have brought that for him. See that they do so for the other sessions of court, if they will.

Trial Transcript, Day 1 (Document No. 139) at 23. Given that counsel did raise the issue, as well as Pryor's failure to articulate what more counsel should have done, Pryor has not shown that counsel's performance was deficient or that it prejudiced him. Accordingly, under *Strickland*, no relief is available on this ineffectiveness claim.

### 4.  Use of prior convictions

Pryor next complains that his counsel should have objected to the use of his prior convictions for career enhancement purposes on the basis that the prior convictions were too old, too remote, and not sufficiently severe to serve as prior convictions for career enhancement purposes.

In response to this allegation of ineffectiveness, R.E. Wheelan stated in his affidavit:

> I always carefully review the criminal history paragraphs, as well as the rest of a PSR, for accuracy, and I did so in this case. Mr. Pryor admitted to me that the

8

> prior convictions in the PSR were his, and I verified them through the office of the clerk of court, Harris County.

Affidavit of R.E. Wheelan, attached to the Government's Motion for Dismissal (Document No. 155). Pryor has not, with his own affidavit, disputed Wheelan's statements in this regard. Moreover, Pryor has made no showing that his prior convictions could not have been used for enhancement purposes.

> Under the career offender enhancement provisions of the United States Sentencing Guidelines:
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

§ 4B1.1(a). There is no time or age limit on the offenses that can be used to establish career offender status under § 4B1.1. As such, Pryor's prior convictions for aggravated robbery (April 1983, age 18), aggravated assault with a deadly weapon (November 1985, age 20), aggravated assault threat with a deadly weapon (December 1984, age 19), and possession of cocaine (November 1988, age 23) all qualified as requisite prior convictions for purposes of § 4B1.1's career offender enhancement. Because Pryor has not articulated how any of those prior offenses could have been challenged and has not shown that § 4B1.1 was not applicable, counsel was not ineffective, within the meaning of *Strickland*, for failing to object to the use of Pryor's prior convictions for career offender enhancement purposes.

### 5. Sufficiency of the Evidence

In his next claim of ineffectiveness, Pryor alleges that his counsel should have challenged the sufficiency of the evidence to support his convictions. According to Pryor, there was insufficient evidence that he possessed the firearms found in the apartment, insufficient evidence that he

possessed the controlled substances found in the apartment, and insufficient evidence that he used any of the firearms in furtherance of a drug offense.

Both the record and the affidavit of R.E. Wheelan show that the defense's strategy at trial was to show that the apartment in which the firearms and the controlled substances were found was not Pryor's. Pryor testified that the apartment was Ralph Holmes'. Holmes testified that the apartment, and its contents, were his. Against this testimony, however, was the fact that Pryor identified the apartment as his to police officers at the time of his arrest, had a key to the apartment, consented to the search of the apartment, knew where both the firearms and the drugs were in the apartment, and asked officers at the time of his arrest to retrieve his tennis shoes from a closet in the apartment. The Government also offered the testimony of the apartment complex manager who stated that Pryor was regularly at the apartment complex, that Pryor regularly received his mail at the apartment complex, and that she had never seen Ralph Holmes at the apartment complex. Given this evidence, counsel could not have made a credible argument that there was insufficient evidence to support Pryor's guilt. Accordingly, counsel's performance was not deficient and there is no reasonable probability that the result of the trial would have been different if counsel had challenged the sufficiency of the evidence.

      **6.**    **Interview of Government's witnesses**

Pryor next complains that counsel failed to interview the Government's witnesses prior to trial. Pryor does not state, in particular, which witnesses his counsel should have interviewed and does not articulate how the outcome of the trial would have been different if counsel had interviewed the Government witnesses. This conclusory ineffectiveness claim fails.

      **7.**    **Tennille Whirl**

In his final ineffectiveness claim, which was raised by Pryor in the affidavit he filed in response to his counsel's affidavit (Document No. 158), Pryor maintains that his counsel should have called Tennille Whirl to testify for the defense. According to Pryor, Tennille Whirl had admitted prior to trial that she had fabricated the assault allegation that eventually led to Pryor's arrest. In addition, Pryor maintains that Whirl could have testified, and bolstered the defense's case, that the apartment in which the firearms and controlled substances were found was not Pryor's.

Complaints concerning uncalled witnesses are not favored in federal habeas corpus review because of the speculative nature of allegations of what a witness might have testified. *Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir.), *cert. denied*, 498 U.S. 990 (1990); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987). Where the only evidence of a missing witness's testimony is provided by the habeas petitioner, federal courts view claims of ineffective assistance of counsel with great caution. *Id.* To demonstrate error, a petitioner must prove that a witness's testimony would have helped him, and that the witness would have testified to certain facts or information at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, Pryor has submitted the affidavit of Whirl, in which she states:

I signed two sworn affidavits one on March 8, 2004 and the other on April 2004, admitting that I made [a] false statement to the Houston Police Department about Mr. Russell Ray Pryor, the Defendant having drugs in his apartment.

I also sent a letter to the Honorable Judge EWING WERLEIN Jr., admitting that I lyied [sic] on Mr. Pryor on March 2, 2004 to the HPD.

Mr. Wheelan told the Defendant that the Government was going to call me to testify. Mr. Wheelan promised the Defendant that if the Government failed to call me as a witness, then he would call me as a witness for the Defendant[.] [O]nce the Government realized that I was going to testify for the Defendant and admitted that I lied on him, the Government no longer wanted me at trial, although I was on the Government list of witness[es], they did not want me.

11

> I also wanted to testify to that single key the Defendant had on him. He had just took that single key out of my purse while looking for his basketball tickets.
>
> The Defendant is the father of my child born on November 3, 2004. Therefore, he did not think it was a good idea of me having Mr. Holmes apartment key, so he took it from me out of jealousy, not with intention to use it but to keep me from having another man's key.
>
> And I am also the one who informed the Police that the Defendant had that single key in his pocket. It was an unfortunate circumstance for the Defendant to have just received that single key right before the Police got there. By the Defendant having that single key in his pocket, I was able to make the officers believe that it really was his apartment. At that time, I did not think that the officers were going to check the lease agreement and find out that it was not really his apartment.
>
> However, using that false statement I gave them, they drove Defendant some 15 to 20 miles to the Arena Garden Apartments and charged him with [what] was inside that Apartment.
>
> Mr. Wheelan was able to get in contact with all the Defendant's witnesses through Mr. Ray Pryor likewises [sic]. Mr. Wheelan was supposed to contact me through Mr. Ray Pryor. However, Mr. Wheelan failed to call me to testify to that single key the Defendant had in his pocket away from his other keys, that were all together on one key ring. That key was not with his other keys because he had just took it from my purse.
>
> Mr Wheelan failed to call me to testify that the Defendant had just got that key from me. I would like to come and tell the Court what happened.

Affidavit of Tennille Whirl, attachment No. 1 to Pryor's Affidavit (Document No. 158). Despite those statements in her affidavit, it cannot be said, upon this record, that Pryor has shown that Whirl would have testified if she had been called as a witness. On the first day of trial, a hearing was held outside the presence of the jury on Pryor's complaints about Wheelan's performance as his trial counsel. During that hearing, Wheelan advised the Court that none of the witnesses whom Pryor wanted to call to testify would provide him with an address so that they could be subpoenaed. Instead, Pryor insisted that Wheelan communicate with any such witnesses through his (Pryor's)

brother. Whirl admitted as much in her affidavit. Thus, regardless of Pryor's claim that counsel should have called Tennille Whirl as a witness for the defense, Pryor provided counsel with no means to assure her appearance at trial.

Moreover, even if Tennille Whirl had been called to testify and had testified in accord with the contents of her affidavit, there is no reasonable likelihood that the result of the trial would have been different. The evidence against Pryor was substantial. Ralph Holmes, who testified that the apartment, the drugs and the firearms were his, was systematically and repeatedly impeached on cross-examination. Whirl would have been subject to the same type of forceful impeachment. As such, Pryor cannot be said to have been prejudiced, within the meaning of *Strickland*, by counsel's failure to call Tennille Whirl as a witness for the defense.

**B. Insufficient Evidence Claim**

In his next claim, Pryor maintains that there was insufficient evidence to support his convictions. Because Pryor did not raise this claim on direct appeal, the Government argues that the claim is procedurally barred from review.

Pursuant to 28 U.S.C. § 2255, a federal prisoner may challenge his conviction on the basis that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Motions brought pursuant to § 2255 are reserved for claims of constitutional or jurisdictional significance. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981); *Limon-Gonzalez v. United States*, 499 F.2d 936, 937 (5th Cir. 1974).

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992). Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'").

Here, Pryor faults his appellate counsel for failing to raise a sufficiency of the evidence claim on appeal. Had such a claim been raised, however, it would have been rejected. In connection with the claims that were raised on appeal, the Fifth Circuit found the evidence against Pryor to be "substantial". *United States v. Pryor*, No. 05-20307 (Document No. 147) at 6. That determination undermines any claim by Pryor that a viable sufficiency of the evidence claim could have been made by counsel on appeal. Moreover, given the evidence in the record, Pryor has not and cannot make a showing that he is actually innocent of the offense. As such, Pryor's sufficiency of the evidence claim has been procedurally defaulted and is not subject to review herein.

### C. Prior Convictions Claim

In his next claim, Pryor complains about the prior convictions that were used to impose a career offender enhancement. While Pryor maintains that his prior convictions were too old, and not severe enough, he does not dispute the existence of the prior convictions.

Pryor did not raise this claim on direct appeal, and in the absence of a showing of cause and prejudice or actual innocence, the claim is procedurally defaulted. Pryor admitted the existence of the prior convictions. Because there was no valid objection to be made to the use of the prior convictions for career offender enhancement purposes, *see supra* pages 8-9, and because Pryor has not and cannot establish that he is actually innocent, Pryor's claim that his prior convictions were improperly used is also procedurally defaulted and not subject to review herein.

### D. Hearsay/Confrontation Clause Claim

In his next claim, Pryor complains about the admission of a hearsay statement that he was a drug dealer. This claim was raised and rejected on direct appeal. In so doing, the Fifth Circuit wrote:

Pryor next claims that the Confrontation Clause was violated when the district court admitted an out-of-court statement made by a witness who did not testify at trial – specifically, his girlfriend's statement to police that he was a drug dealer. "Confrontation Clause objections that were properly raised at trial are reviewed *de novo*, subject to harmless error analysis." *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006) (quoting *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004)).

At one point, the government asked an officer what he did based on the information he learned from Whirl. The officer answered, "I learned that he was a dope dealer." The court sustained the defense objection that the answer was not responsive and instructed the jury to disregard the statement. The government later asked another officer why he searched Pryor's vehicle, and defense counsel again objected on the basis that the answer would violate the defendant's Confrontation right. The court overruled the objection on grounds that the statement was not being offered for the truth of the matter asserted, and allowed the officer's answer for the limited purpose of showing why the officer searched the vehicle. The officer repeated Whirl's statement that Pryor was a drug dealer.

The Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). This prohibition is "irrespective of whether the statement falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *United States v. Holmes,* 406 F.3d 337, 348 (5th Cir. 2005). Testimonial statements may be admitted, however, so long as they are not being used to prove the truth of the matter asserted. *Id.* at 349; *Crawford*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (citation omitted).

Pryor plausibly argues that the statement was testimonial and, despite court statements to the contrary, was admitted for the truth asserted. We need not wade into those waters because, even assuming a Confrontation Clause violation occurred, the error was harmless. To determine whether the Confrontation Clause error was harmless, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The government's evidence against Pryor was substantial and Pryor's only defense was that the apartment in question was not his. This claim is in no way undercut by the allegedly wrongfully admitted statement. Further, it was supported only by his own testimony and that of his cousin, while the officers testified that Pryor claimed it was his apartment, provided the key to it, led the officers to it, knew where

16

> the guns were located inside, knew which drugs were in the apartment, and told officers, upon finding the last bottles of codeine syrup, that they'd found everything. Further, Pryor was able to direct the officers to the closet and describe a specific pair of shoes that he wanted to wear. The clothing in the closet appeared to fit Pryor. Officers also found Pryor's personal mail inside the apartment. Finally, the apartment manager testified that she saw Pryor once a week collecting his mail, and that he'd answered the door on at least one occasion.
>
> Pryor argued at trial that the witnesses against him, including the officers and apartment manager, were lying. To the extent that the trial boiled down to a swearing match between Pryor and the government's witnesses, the testimonial statement could have conceivably tarnished Pryor's credibility as a witness in the eyes of the jury. Nevertheless, given the extent of the evidence against Pryor, the admission of Whirl's testimonial statement represented a small part of what was otherwise overwhelming accumulation of evidence. Therefore, the admission of that statement, despite any possible Confrontation Clause violation, was harmless.

*United States v. Pryor*, No. 05-20307 (Document No. 147) at 4-7. Claims raised and rejected on direct appeal cannot be relitigated in a § 2255 proceeding. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."), *cert. denied*, 476 U.S. 1118 (1986); *see also United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). As such, no relief is available to Pryor on his hearsay/Confrontation Clause claim.

### E. Ineffective Assistance of Appellate Counsel Claim

In his final claim, Pryor maintains that his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) ineffective assistance of trial counsel; (2) insufficient evidence; and (3) improper use of Pryor's prior convictions for purposes of the career offender enhancement.

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With respect

17

to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

Here, there is no reasonable likelihood that the result of Pryor's appeal would have been different if appellate counsel had raised the issues identified by Pryor. First, notwithstanding the fact that ineffective assistance of trial counsel claims are generally not considered on direct appeal, *see United States v. Miller*, 406 F.3d 323, 335-36 (5th Cir.), *cert, denied*, 546 U.S. 929 (2005), Pryor's ineffectiveness claims, as set forth above, have no merit. As for the challenge to the sufficiency of the evidence Pryor believes counsel should have raised, because the Fifth Circuit, in connection with its consideration of Pryor's Confrontation Clause claim, found the evidence against Pryor to be "substantial", there is no reasonable likelihood that a challenge to the sufficiency of the evidence would have been successful. Finally, with respect to the use of Pryor's prior offenses for career offender enhancement purposes, because Pryor has not identified a viable challenge to: (1) the use of his prior convictions; (2) the determination that he met § 4B1.1(a)'s definition of a career offender; and/or (3) his sentence as a career offender, Pryor has made no showing that appellate counsel was deficient or that he was prejudiced thereby. Accordingly, no relief is available on Pryor's ineffective assistance of appellate counsel claims.

## V.     Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Movant Russell Ray Pryor on the claims he raises in this § 2255 proceeding, the Magistrate Judge

RECOMMENDS that the Government's Motion for Dismissal (Document No. 155) be GRANTED, that Movant Russell Ray Pryor's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 152) be DENIED, and that this § 2255 proceeding be DISMISSED on the merits.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 3rd day of October, 2008.

Frances H. Stacy
United States Magistrate Judge